This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Vincent Niepsuj, appeals the decision of the Akron Municipal Court, which convicted him of criminal trespass and sentenced him accordingly. This Court affirms.
 I. {¶ 2} On June 26, 2002, appellant was arrested by officers of the University of Akron Police Department and charged with one count of criminal trespass in violation of R.C. 2911.21(A)(4). The case proceeded to a jury trial on September 5, 2002, and appellant was found guilty of criminal trespass. The trial court sentenced appellant to thirty days in the Summit County Jail and a $100.00 fine. Both the jail sentence and the fine were suspended on the condition that appellant serve ten days in the Terrence Mann Rehabilitation Center and complete one year of probation.
 {¶ 3} Appellant timely appealed, setting forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"Appellant's criminal trespass conviction is against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, appellant argues that his criminal trespass conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 5} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
"A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue more than it supports the other. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." (Citations omitted.) State v.Morton, 9th Dist. No. 21047, 2002-Ohio-6458, ¶¶ 26-27.
 {¶ 6} In the instant case, appellant was charged with criminal trespass under R.C. 2911.21(A)(4), which provides: "No person, without privilege to do so, shall * * * [, b]eing on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either."
 {¶ 7} The State presented several witnesses who testified about the facts of appellant's trespass. Dr. Fitch, a professor and the director of the School of Social Work at the University of Akron, testified that she was working in her office at the Polsky Building on June 26, 2002, the day of the incident. She stated that appellant came into the office in the late morning looking to find Dr. Denton, the Executive Director of Victim Assistance and an associate professor at the university. She informed him Dr. Denton was not in the office and he did not teach for the university in the summer. Dr. Fitch testified that appellant replied by telling her he needed to get in touch with Dr. Denton but he was not allowed to contact him at Victim Assistance. She then offered to take down a message from appellant for Dr. Denton and she asked for his name. Appellant did not tell her his name and stated that he would write the message himself.
 {¶ 8} Dr. Fitch testified that appellant then proceeded to sit down in the reception area, started writing something, and continued writing there for an hour and a half. She stated that she approached him a couple of times to see if she could take the message and appellant kept stating he was not finished and kept writing. She testified that her initial conversation with appellant and his subsequent behavior made her uncomfortable, as well as other faculty and staff in the office. Dr. Fitch decided to call Victim Assistance to inquire about why appellant was prohibited from contacting Dr. Denton at their location. She learned both appellant's name and information about him that raised her concern about his presence at the office and his search for Dr. Denton. She called the University of Akron police, explained that there was no emergency but that they were concerned about an individual remaining in their office who was searching for Dr. Denton although Victim Assistance notified him not to contact Dr. Denton.
 {¶ 9} Two of the university police officers who responded to the scene testified concerning what happened upon their arrival to the office. Officer Shannon testified that she was first to arrive on the scene. She had been told appellant's first name and when she approached him she asked if he was Vincent, to which he said yes. She then asked if he had any identification, he said yes, she asked to see it and appellant refused her request. She asked him if he was a student and he replied no. Officer Shannon explained to appellant that he was making the office staff very uncomfortable and she requested that he leave the premises. She explained to him that he would receive a trespass warning and that he would have to stay off university property. She asked appellant to leave three times and he refused every time and kept questioning her and arguing about being told to leave the premises.
 {¶ 10} Officer Shannon testified that at that point Sergeant Newman and Sergeant Lavery arrived at the scene and Sergeant Newman began talking with appellant. She explained that appellant continued to be uncooperative with Sergeant Newman, who also requested appellant to leave the premises several times. She stated that appellant kept refusing to leave and the officers eventually arrested him for his failure to cooperate and comply with their requests that he leave the premises.
 {¶ 11} Sergeant Newman also testified concerning the incident with appellant. When he arrived at the scene, he observed Officer Shannon calmly speaking with appellant, who was being uncooperative and not answering her questions. Instead, he noticed appellant interrupting her with his own questions. Sergeant Newman testified that he approached appellant and asked for his identification and appellant refused to show him anything. Sergeant Newman asked appellant to turn around and put his hands on the wall so he could conduct a search because appellant was not cooperating with the officers and told them he was going to stay. Sergeant Newman confirmed appellant's identity during the search. After talking with appellant, he asked him to leave the premises five times. Each time appellant responded with the same questions in what appeared to be a stall attempt with the officers. Sergeant Newman testified that appellant insisted on staying and kept refusing to leave, so they finally felt it was necessary to arrest him because he did not cooperate with the roughly eight warnings they gave him to leave the premises. Consequently, appellant was charged with criminal trespass.
 {¶ 12} The State also presented Ms. Florin, the Assistant Director of Victim Assistance, to testify at trial. She testified that their agency had met with appellant's wife in the Fall of 2001 and assisted her in getting a civil protection order against appellant. She stated that, after they had met with his wife, appellant began coming to Victim Assistance to tell the staff his side of the story and to tell them that his wife was competent and did not need their help and that they should help him in the proceedings instead. Ms. Florin explained to appellant that the agency guidelines prohibited them from working with him because he was the defendant/respondent in his wife's petition for a protection order and, because they were assisting his wife, it would be a conflict to assist him at the same time. Despite Ms. Florin's explanation, appellant continued to contact the agency by making numerous phone calls and approaching the staff while they were at court assisting victims.
 {¶ 13} Ms. Florin testified that she eventually contacted the agency's attorneys, who advised her to address the problem with appellant through a written letter. She presented appellant a written letter in court before the judge during one of the protection order hearings between appellant and his wife. She read the letter on the record, which stated that appellant was not to have any further contact with the Victim Assistance staff, he was not to visit the office or be on the property, and if he continued to do so they would prosecute him. Ms. Florin testified that, after she finished reading the letter, appellant specifically inquired whether that meant he could not talk with Dr. Denton and she told him yes, he could not contact Dr. Denton.
 {¶ 14} She stated that, despite these efforts, appellant continued to call the agency and the crisis hotline, as well as approaching staff workers in and out of court. Ms. Florin testified that on June 26, 2002, at around 1:15pm she received a call from Dr. Fitch concerning a man who was in the office looking for Dr. Denton. Once Dr. Fitch described the man, Ms. Florin informed her that it was appellant, told her his name, and explained to her that he was prohibited from contacting Dr. Denton or any other Victim Assistance staff.
 {¶ 15} After extensive review of the record, this Court finds that appellant's trespass conviction was clearly supported by the weight of the evidence. Appellant actively sought Dr. Denton with the full knowledge that he was prohibited from contacting him and refused to leave the Polsky Building office after two different university officers, per the request of the office staff, asked him to leave numerous times. Given the above facts, this Court cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction for trespass must be reversed and a new trial ordered. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"Appellant was materially prejudiced and denied a fair trial by the state's elicitation of testimony in its case in chief that appellant was mentally ill."
 {¶ 16} In his second assignment of error, appellant argues that he was materially prejudiced and denied a fair trial because the State elicited testimony from a witness that appellant was mentally ill. This Court disagrees.
 {¶ 17} In the instant case, during the State's direct examination of Officer Shannon it questioned her about the trespass warning she filled out and gave to appellant. Within that questioning, the State asked her what she wrote on the note section of the warning and she answered "mentally ill." Appellant claims that the trial court erred in not giving any curative instruction after it sustained appellant's objection to Shannon Officer's testimony that she made the notation "mentally ill" on appellant's trespass warning. This Court has held that, where a party fails "to follow up its objection with a motion for mistrial or alternatively to strike the answer and give a curative instruction", that party waives its right to assert the error on appeal.Hernandez v. Rivera (Oct. 30, 1985), 9th Dist. No. 3855. In the instant case, appellant only objected to the testimony and failed to request a curative instruction, thereby waiving the error on appeal. Appellant's second assignment of error is overruled.
 III. {¶ 18} Accordingly, appellant's two assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.
Judgment affirmed.
Baird, P.J. and Whitmore, J. concur.